| | |
|---|---|
| JOHN ANDREW NEWBOLD, THROUGH HIS DULY AUTHORIZED CURATOR, DAVID NEWBOLD; DAVID NEWBOLD, INDIVIDUALLY; BRIANA CAROLINE STOCKETT; AND DEANNA NICOLE SMITH | THIRD JUDICIAL DISTRICT COURT<br><br>PARISH OF UNION<br><br>STATE OF LOUISIANA |
| VERSUS | CIVIL DOCKET NO.: 49,745 |
| KINDER MORGAN SNG OPERATOR L.L.C., AND AND SOUTHERN NATURAL GAS COMPANY, L.L.C. | |

FILED: March 15, 2021          DEPUTY CLERK OF COURT: _____

## PETITION

NOW INTO COURT, through undersigned council, come:

a. John Andrew Newbold, through his duly authorized curator David Anthony Newbold;

b. David Anthony Newbold, individually;

c. Briana Caroline Stockett; and

d. Deanna Nicole Smith,

who, for damages and for causes of action respectfully represent as follows, to wit:

1.

These are actions sounding in tort for damages suffered by petitioners as a result of injuries suffered by them arising out of the fault and/or negligence of the defendants herein.

2.

Petitioners are all of full age of majority and are major residents and domiciliaries of the Parish of Ouachita, State of Louisiana.

3.

Petitioner, David Anthony Newbold, appears herein individually and as the duly appointed curator for the interdict, John Andrew Newbold, with full authority to bring this action on behalf the interdict John Andrew Newbold.

4.

Petitioners David Anthony Newbold, Briana Caroline Stockett and Deanna Nicole Smith are the sole and only children of the interdict, petitioner, John Andrew Newbold.

**EXHIBIT "A"**

A TRUE COPY
Dy. Clerk of Court Union Parish, La.

5.

This action is brought pursuant to the general maritime law of the United States and Louisiana tort law (Louisiana Civil Code article 2315 *et seq*).

6.

This Honorable Court has jurisdiction over these general maritime causes of action as conferred by the Saving to Suitors Clause of Title 28 U.S.C. §1333 and the United States Constitution and the Constitution of the State of Louisiana.

7.

Made defendants herein are:

a. Kinder Morgan SNG Operator L.L.C., a Delaware limited liability company authorized to do, and doing busines in the State of Louisiana, whose registered agent for service of process is Capital Corporate Services, Inc., 8550 United Plaza Building II, Ste. 305, Baton Rouge, LA 70809; and

b. Southern Natural Gas Company, L.L.C., a Delaware limited liability company, authorized to do, and doing business in the State of Louisiana, whose registered agent for service of process is CT Corporation System, 3867 Plaza Tower Dr., Baton Rouge, LA 70816.

THE ALLISION

8.

On April 16, 2020, Jason Rodgers and his guest, petitioner, John Andrew Newbold, set out to fish in the waters of the D'Arbonne Wildlife Refuge.

9.

Neither Jason Rodgers, nor John Andrew Newbold, had ever fished in the D'Arbonne Wildlife Refuge prior to that date.

10.

In furtherance of the plans to fish the D'Arbonne Wildlife Refuge area, Jason Rodgers and John Andrew Newbold launched Jason Rodgers' 14-foot flat bottom aluminum boat into Bayou D'Arbonne at the boat launch on Holland's Bluff Road, located in the D'Arbonne Wildlife Refuge in Union Parish, Louisiana.

11.

Jason Rodgers' boat was powered by a 25-horsepower Mercury outboard motor.

12.

A portion of Bayou D'Arbonne runs though the D'Arbonne National Wildlife Refuge.

13.

The portion of Bayou D'Arbonne which is relevant to the causes of action set forth below traverses the D'Arbonne National Wildlife Refuge, within the confines of Union Parish, and is a navigable waterway.

14.

Shortly after launching the boat, Jason Rodgers, who was operating the vessel, spotted a straight, clear channel adjacent to Bayou D'Arbonne and made a right turn into the center of the waterway.

15.

Petitioner, John Andrew Newbold, was a guest passenger in the boat and was seated in a chair in the starboard bow. Jason Rodgers was seated in the rear of the boat, operating the tiller on the outboard motor.

16.

Unknown to Jason Rodgers and John Andrew Newbold, the channel adjacent to Bayou D'Arbonne was, in fact, created as part of the natural gas pipeline servitude for the Logansport Loop Line owned by Southern Gas Pipeline; L.L.C., and operated by Kinder Morgan SNG Operator, L.L.C.

17.

There were no visible markers or signs or any other indication warning that the straight, open waterway was a pipeline servitude.

18.

Upon entering the open channel, Jason Rodgers navigated to the center of the waterway and accelerated the boat.

19.

Suddenly, and without warning, the boat operated by Jason Rodgers struck a totally submerged obstruction, causing the immediate and sudden stop of the vessel.

20.

The submerged obstruction was a special mark (as defined by 33 CFR § 62.31) to indicate the area was a natural gas pipeline area (said special mark hereinafter referred to as "THE SPECIAL MARK").

21.

THE SPECIAL MARK was constructed of large steel pipe.

22.

As a result of the immediate and sudden stop following the allision, John Andrew Newbold was violently thrown from the boat and he suffered serious and incapacitating injuries when the propeller of the outboard motor struck him in the head.

OWNERSHIP, CUSTODY AND CONTROL OF THE LOGANSPORT LOOP PIPELINE

23.

Southern Natural Gas COMPANY L.L.C. is the owner of an interstate pipeline system which includes the West Leg Supply System and its subsystem the Logansport Loop Line.

24.

The Logansport Loop Line traverses Bayou D'Arbonne in the D'Arbonne National Wildlife Refuge within the confines of Union Parish, Louisiana.

25.

At the location of this incident, the subject pipeline is in a pipeline servitude purchased in 1941 by Southern Natural Gas Company (the predecessor corporation to Southern Natural Gas, L.L.C.) from D'Arbonne Company.

26.

In 1977, the land subject to the pipeline servitude was condemned by the United States government, which expropriated the property to include it within the confines of the D'Arbonne National Wildlife Refuge.

27.

Ownership and operation of the pipeline servitude remained with Southern Natural Gas Company, the predecessor corporation of defendant, Southern Natural Gas Company, L.L.C.

OPERATION OF THE LOGANSPORT LOOP LINE

28.

On information and belief, Southern Natural Gas Company operated and maintained the Logansport Loop Line from the time the pipeline was completed until Southern Natural Gas Company became a division of Sonat, Inc. in 1982.

29.

In 1999, Sonat merged with El Paso Corporation, and Southern Natural Gas Company, and became a division of El Paso Corporation.

30.

On or about 2008, Southern Natural Gas Company changed its name to Southern Natural Gas Company, L.L.C. In 2012, Kinder Morgan, Inc. acquired El Paso Corporation, and Southern Natural Gas Company, L.L.C. consequently became an indirect, wholly owned subsidiary of Kinder Morgan, Inc.

31.

Petitioners further aver, upon information and belief, that Kinder Morgan Inc. operated and maintained the Logansport Loop Line following the acquisition of El Paso Corporation by Kinder Morgan in 2012.

32.

In 2016, Kinder Morgan, Inc. transferred a one-half interest of Southern Natural Gas Company, L.L.C. to Kinder Morgan SNG Operator, L.L.C., a wholly owned subsidiary of Kinder Morgan, Inc.

33.

Further, in 2016, Kinder Morgan, Inc. sold a one-half interest of Southern Natural Gas Company, L.L.C. to Evergreen Enterprise Holding, Inc., a subsidiary of Southern Company, making the member interests of Southern Natural Gas, L.L.C. to be 50% Kinder Morgan SNG Operator, L.L.C. and 50% Evergreen Enterprise Holding, Inc.

34.

According to the Pipeline and Hazardous Materials Safety Administration pipeline owner details database, the Logansport Loop Line is currently, and at all time material hereto was, operated by Southern Natural Gas Company (Operator ID No. 18516).

35.

In 2016, Southern Natural Gas Company, L.L.C. entered into an Operations and Management Agreement with Kinder Morgan SNG Operator, LLC, a subsidiary of Kinder Morgan, Inc., whereby Kinder Morgan SNG Operator, LLC operates and manages the Logansport Loop Line, as well as other pipelines, for Southern Natural Gas Company, L.L.C. and receives compensation from Southern Natural Gas Company, L.L.C.

36.

Upon information and belief, at all times relevant to this litigation, Kinder Morgan SNG Operator L.L.C. continued to act as the operator for Southern Natural Gas Company, L.L.C. and had the responsibility to operate and maintain the Logansport Loop Line.

37.

In addition, after the allision which is the subject of this petition, THE SPECIAL MARK was removed and replaced. The special mark currently at that location of the accident instructs that "IN EMERGENCY CALL 1-800-252-5960", which is the number listed on the Kinder Morgan, Inc. website as an emergency number for Southern Natural Gas.

CONSTRUCTION, OWNERSHIP, AND MAINTENANCE OF THE SPECIAL MARK

38.

On information and belief, THE SPECIAL MARK struck by Jason Rodgers' vessel was constructed and placed by Southern Natural Gas, L.L.C., or its predecessor, Southern Natural Gas Company, between 1999 and 2012, while these entities were subsidiaries of El Paso Corporation.

39.

At all times relevant hereinto, Southern Natural Gas, L.L.C. or its predecessor, Southern Natural Gas Company, owned and controlled the submerged pipeline SPECIAL MARK that was the cause of the accident sued upon herein.

40.

At all times relevant to this litigation, Kinder Morgan SNG Operator L.L.C. operated, maintained and controlled the submerged SPECIAL MARK that was the cause of the accident sued upon herein.

FAULT OF DEFENDANTS

NEGLIGENCE PER SE

41.

THE SPECIAL MARK obstructed Bayou D'Arbonne, a navigable waterway.

42.

The creation of an obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited by 33 U.S.C. §403.

43.

The primary purpose of 33 U.S.C. §403 is to prevent an allision such as the one which is the subject of this litigation.

44.

The placement of THE SPECIAL MARK obstructing the navigable capacity of Bayou D'Arbonne, and the failure to remove the obstruction created by THE SPECIAL MARK is in violation of 33 U.S.C. §403, and is constitutes negligence per se against the defendants herein.

45.

The allision and resultant injuries to petitioners were caused by the negligence per se of defendants.

46.

In addition to negligence per se, defendants are also liable to petitioners for the following:

FAILURE TO WARN OF A SUBMERGED STRUCTURE IN A NAVIGABLE CHANNEL

47.

An owner and/or operator of a submerged structure obstructing a navigable channel is authorized by United States Coast Guard regulations to mark the submerged structure under 33 CFR 64.11(e).

48.

Southern Natural Gas, L.L.C., or its predecessor, Southern Natural Gas Company, placed THE SPECIAL MARK in a navigable waterway in a location it knew or should have known would be submerged annually, and in a location that it knew or should have known was regularly and frequently used by boaters.

49.

At all times relevant to this litigation, Southern Natural Gas, L.L.C. was the owner of the submerged SPECIAL MARK.

50.

At all times relevant to this litigation, Southern Natural Gas, L.L.C., was the registered operator of the Logansport Loop Line, and thus responsible for THE SPECIAL MARK.

51.

At all times relevant to this litigation, Kinder Morgan SNG Operator, LLC, through its operating and management agreement with Southern Natural Gas, L.L.C., operated and managed the Logansport Loop Line, and is thus responsible for THE SPECIAL MARK.

52.

The backwaters of Bayou D'Arbonne annually rise to levels above the height of THE SPECIAL MARK. This makes the presence of THE SPECIAL MARK completely concealed from the view of boaters for as often as 150 days a year.

53.

At the time of the accident, THE SPECIAL MARK was submerged and completely concealed from view of boaters who regularly and frequently used the navigable waterway to access fishing areas of the D'Arbonne National Wildlife Refuge.

54.

Defendants failed to mark the submerged structure and to otherwise warn of the potential obstruction to navigation.

55.

Defendants failed to report the submerged hazard to the District Commander of the appropriate Coast Guard District as authorized by 33 CFR § 64.11.

FAILURE TO WARN OF A HAZARD TO NAVIGATION AS DEFINED BY 46 CFR § 4.05

56.

The submerged SPECIAL MARK was a hazard to navigation as defined by 46 CFR § 4.05 for the following non-exclusive particulars:

a. submerged obstructions of navigable waterways are a hazard to navigation under the statutes and regulations of the United States;

b. the submerged SPECIAL MARK was in navigable waters immediately adjacent to the main channel of Bayou D'Arbonne;

c. the pipeline servitude where the accident occurred is covered by water for a large portion of each year creating a navigable waterway regularly used by boaters to access popular fishing spots;

d. THE SPECIAL MARK was placed in the middle of the navigable waterway created by the pipeline servitude where boaters are most likely to be traveling;

e. THE SPECIAL MARK was placed in a location and in such a fashion that it is frequently submerged by several feet of water for long periods of time annually in the backwater of Bayou D'Arbonne and there were no floats or other visible indications of the hazard created by the large, fixed underwater obstruction;

f. the depth of water over the obstruction, the fluctuation of the water level, and other hydrologic characteristics in the accident site made THE SPECIAL MARK, at its height and location, an undetectable hazard on the date of the accident;

g. the water is murky so the sign could not be seen when THE SPECIAL MARK is submerged by only a few inches;

h. fishing boats are of a draft and type that would strike the sign when THE SPECIAL MARK is submerged only a few inches; and

i. THE SPECIAL MARK was constructed out of thick, heavy, metal pipe and metal support beams that easily puncture a boat and cause the boat to come to an immediate stop.

57.

Defendants failed to mark the hazard to navigation and to otherwise warn of the hazard to navigation.

GENERAL NEGLIGENCE

58.

The SPECIAL MARK was placed by defendants in the middle of the open channel created by the pipeline servitude.

59.

The area in and around the accident scene is known for fishing and fishing is encouraged inside the D'Arbonne National Wildlife Refuge.

60.

The channel created by the pipeline servitude presented an easily accessible, attractive, clear, and open waterway that lured boaters to enter and use it for the purpose of accessing parts of the D'Arbonne National Wildlife Refuge for fishing and other pursuits.

61.

Boaters are entitled, encouraged and allowed to use the full reach of the navigable waters of Bayou D'Arbonne for fishing and other activities.

62.

The operator of a vessel in a navigable waterway has a right to assume that the navigable waterway is clear of man-made submerged objects and hazards, or that such hazards are properly identified as required by law.

63.

It was reasonably foreseeable to defendants that boaters would enter and use the channel created by the servitude for the purpose of accessing parts of the D'Arbonne National Wildlife Refuge for fishing and other lawful pursuits.

64.

The SPECIAL MARK was placed in the center of the navigable channel, created by the pipeline servitude, where boaters would most likely travel.

65.

The SPECIAL MARK was constructed out of thick, heavy, metal pipe and metal support beams which would easily puncture a boat and it is reasonably foreseeable that such an allision would cause the boat to come to an immediate stop.

66.

The location of the placement of THE SPECIAL MARK created an unreasonably dangerous hazard to navigable waters.

67.

The presence of THE SPECIAL MARK was not reasonably foreseeable to boaters.

68.

Defendants therefore had a duty to warn boaters of the hidden and submerged hazard to the navigation of the waters of Bayou D'Arbonne, as was created by the submerged SPECIAL MARK, and any hazard which was not reasonably foreseeable to boaters.

69.

At the time of the accident, defendants, Southern Natural Gas Company, L.L.C. and Kinder Morgan SNG Operator L.L.C., provided no warnings and/or markers of any kind warning of the submerged SPECIAL MARK that was obstructing and creating a hazard in a navigable waterway at a location reasonably.

70.

Jason Rodgers had no knowledge of the presence of THE SPECIAL MARK.

71.

The presence of THE SPECIAL MARK was not reasonably foreseeable to Jason Rodgers.

72.

The allision and subsequent injuries and damages to your petitioners were caused by the fault, and negligence of defendants, Southern Natural Gas Company, L.L.C. and Kinder Morgan SNG Operator L.L.C., their employees, representatives and/or agents in the following, non-exclusive particulars:

a. creating an unauthorized obstruction of a navigable waterway in violation of 33 U.S.C. §403;

b. failure to install THE SPECIAL MARK in a location that was not in the main travel channel of the navigable waterway created by the pipeline.

c. failure to warn of the submerged SPECIAL MARK that was obstructing a navigable waterway;

d. failure to mark the submerged SPECIAL MARK that was obstructing a navigable waterway;

e. failure to place a floating buoy or indicator on THE SPECIAL MARK which would warn boaters of the existence of the structure during the, frequent and foreseeable, times that THE SPECIAL MARK was submerged;

f. failure to warn boaters of the existence of the submerged SPECIAL MARK when it was reasonably foreseeable and knowable that the submerged maker could not be discovered, anticipated, or seen by boaters for a significant portion of the year;

g. failure to discover by inspection that the sign that was a hazard to boaters on a navigable waterway; and

h. failure to report the submerged hazard to the appropriate governmental agencies.

73.

As a result of the allision, John Andrew Newbold received the following non-exclusive injuries:

a. head trauma;

b. open skull fracture;

c. laceration of scalp;

d. traumatic hemorrhage of left cerebrum with prolonged loss of consciousness without return to pre-existing conscious level with patient surviving;

e. anoxic brain injury;

f. damage to left temporal and left parietal lobes, speech and right-side motor skills affected;

g. aspiration requiring permanent tracheostomy and feeding tube;

h. acute kidney injury;

i. acute tubular necrosis;

j. acute blood loss anemia;

k. pressure injury of sacrum (stage 4) and lower right buttock (stage 3)

l. acute hypoxemic respiratory failure; and

m. aspiration pneumonia.

74.

As a result of the afore-described incident, injuries and damages, defendants, Southern Natural Gas Company, L.L.C. and Kinder Morgan SNG Operator L.L.C., are liable jointly, severally and in solido, to John Andrew Newbold for loss of wages, loss of future earnings and earning capacity, past, present and future medical expenses, benefits, loss of enjoyment of life, mental anguish disability, disfigurement, mental and physical pain and suffering and any other items of damage which may be proven at trial on the merits in an amount as is reasonable in the premises.

75.

As a further result of the injuries and damages to John Andrew Newbold, defendants, Southern Natural Gas Company, L.L.C. and Kinder Morgan SNG Operator L.L.C., are liable to David Anthony Newbold, Briana Caroline Stockett, and Deanna Nicole Smith, the children of John Andrew Newbold, jointly, severally and in solido, for past, present, and future loss of consortium, service, love, affection and society, mental anguish and nurturing, in an amount as is reasonable in the premises.

WHEREFORE, premises considered petitioners, John Andrew Newbold, through his duly authorized curator David Anthony Newbold, David Anthony Newbold, individually, Briana Caroline Stockett, and Deanna Nicole Smith, respectfully pray that defendants, Kinder Morgan SNG Operator L.L.C. and Southern Natural Gas Company, L.L.C., be duly cited to appear and answer and after all legal delays and due proceedings had, this Honorable Court render judgment in favor of petitioners and against defendants, jointly and in solido, in an amount reasonable in the premises, together with pre-judgment and post-judgment interests and costs.

AND FOR ALL GENERAL AND EQUITABLE RELIEF

Respectfully submitted,

*[signature]*

James M. Wilkerson #19214
207 West Mississippi Avenue, Ste. 200
Ruston, Louisiana 71270
Telephone: (318) 255-9299
E-mail: james@jamesmwilkerson.com
Attorney for Petitioners

PLEASE SERVE:

Kinder Morgan SNG Operator L.L.C.,
through its registered agent for service of process:

    Capital Corporate Services, Inc.
    8550 United Plaza Building II, Ste. 305
    Baton Rouge, LA 70809

Southern Natural Gas Company, L.L.C.
through its registered agent for service of process:

    CT Corporation System
    3867 Plaza Tower Dr.
    Baton Rouge, LA 70816